Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-886-0252
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NETWORK CAPITAL FUNDING CORPORATION,<br><br>　　　　　Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br><br>**Jury Trial Demanded** |

Plaintiff PAUL SAPAN ("Plaintiff" and/or "Plaintiffs"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Plaintiffs bring this action for injunctive relief and damages against Defendant demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1.      Plaintiff at all times herein mentioned was a resident of the County of Orange, State of California.

2.      Defendant NETWORK CAPITAL FUNDING CORPORATION is, and at all times herein mentioned was, a Delaware Corporation, headquartered in the State of Ohio, doing business in the County of Orange, State of California (hereinafter referred to as "Defendant" and/or "NETWORK CAPITAL").

3.      This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA").  The U.S. Supreme Court decided that federal courts have federal question subject matter jurisdiction over such TCPA civil actions under 28 U.S.C. §§ 1331 and 1441.  *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 387, 132 S.Ct. 740, 753 (2012).

4.      At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

## NATURE OF THE ACTION

5.      Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from June 18, 2020 to the present, including up to and through trial.*

- 2 -

Complaint

6.    The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*, phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission.  47 U.S.C. § 227(b)(1)(B).

7.    NETWORK CAPITAL is engaged in a scheme to sell mortgage refinance services via cold calls to residential phone numbers on the protected federal Do Not Call Registry.

8.    Thus, NETWORK CAPITAL is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

9.    The modus operandi is the same for all the calls in this case, NETWORK CAPITAL either directly or using an agent acting at the direction of NETWORK CAPITAL calls various numbers in the United States to sell NETWORK CAPITAL's services without regard to whether those numbers are on the Do Not Call Registry or not.

10.    NETWORK CAPITAL and/or its agents do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

11.    These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

12.    NETWORK CAPITAL has intentionally violated the TCPA in a so-far successful attempt to sell financial and/or mortgage packages for years.

## **FACTUAL DETAILS RE NAMED PLAINTIFF**

13.    Defendants made Fifteen (15) calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their mortgage refinance

services on the following dates and times and using the following Caller ID

("CID") numbers:

- 6/19/20, 6:05pm, CID 818-350-8746.
- 6/19/20, 6:08pm, CID 949-408-2107.
- 8/14/20, 4:58pm, CID 949-408-2107.
- 8/18/20, 2:52pm, CID 213-358-2439.
- 8/24/20, 4:41pm, CID 424-276-6367.
- 8/25/20, 8:34am, CID  213-358-2439.
- 8/26/20, 10:20am, CID 747-215-9961.
- 8/27/20, 10:45am, CID 213-358-2442.
- 9/2/20, 12:33pm, CID 213-784-0504.
- 9/3/20, 3:45pm, CID 310-928-6977.
- 11/7/20, 10:59am, CID 213-214-0103.
- 11/7/20, 1:04pm, CID 213-214-0103.
- 11/11/20, 3:20pm, CID 213-214-0103.
- 11/11/20, 3:21pm, CID 213-214-0103.
- 11/11/20, 4:50pm, CID 213-214-0103.

14.    Mr. Sapan made a log of all the calls he received from NETWORK

CAPITAL during or shortly after receiving the calls which includes the date and

time of the call as well as brief notes about what happened during the calls.

15.    This call log is attached to this Complaint as Exhibit 1, and is

incorporated herewith.

16.    All the calls illegally blocked transmitting Caller ID Name

information.  *See*, 47 U.S.C. § 227(e) (Truth in Caller ID Act of 2009).

17.    Mr. Sapan's residential line has been tariffed as a residential line since

he was assigned it by the phone company more than ten (10) years ago.

- 4 -

Complaint

18.     Mr. Sapan registered his residential line on the National "Do-Not-Call" Registry on December 22, 2007 and Mr. Sapan has kept his residential line on the Registry from that time to the present.

19.     Mr. Sapan never gave any NETWORK CAPITAL or any other person, agent, employee or entity associated with NETWORK CAPITAL express written permission to call him, nor does he have an established business relationship nor personal relationship with NETWORK CAPITAL or any other person, agent, employee or entity associated with NETWORK CAPITAL.

20.     On the first call on June 19, 2020 at 6:05pm the caller self-identified as "Carl with Network Capital" and tried to sell Mr. Sapan home mortgage refinance services.

21.     Mr. Sapan did not recognize the name of the company immediately and asked where it was located to help identify it and "Carl with Network Capital" said they were in Irvine.

22.     Mr. Sapan stayed on the line to determine the exact identity of this illegal caller while and answered the questions asked by "Carl", who then said he would conference in his banker and he brought Alex with Network Capital on the line.

23.     At no point during the call did Mr. Sapan ask for a quote and before he could tell them never to call again, the call disconnected presumably due to some technical glitch.

24.     Mr. Sapan had never requested mortgage refinance services from NETWORK CAPITAL before or during any call including this first call.

25.     NETWORK CAPITAL called again a few minutes later on June 19, 2020 at 6:08pm using a different CID number 949-408-2107 and only this call displayed CID Name information, reading "Network Capital".

26.     Mr. Sapan was busy and did not pick up this call, and "Alex" with Network Capital left a voicemail saying he was calling back even though Mr.

Complaint

Sapan never gave any permission to do so nor ever requested any call, let alone a call back.

27.    NETWORK CAPITAL called again on August 14, 2020 at 4:58pm, and Mr. Sapan answered a "Alex at Network Capital" self-identified again trying to sell mortgage refinance services again and yet again the call disconnected due to some technical problem before Mr. Sapan could tell him not to call anymore and hang up.

28.    NETWORK CAPITAL called again on August 18, 2020 at 2:52pm, and the sales representative self-identified as "David with Network Capital" trying to sell home mortgage refinance services, whereupon Mr. Sapan hung up since he had sufficiently identified this junk caller.

29.    NETWORK CAPITAL called again on August 24, 2020 at 4:41pm, and the sales representative self-identified using a first name Mr. Sapan did not hear but saying clearly "with Network Capital" after the unheard name and yet again tried to sell home mortgage refinance services, whereupon Mr. Sapan hung up.

30.    NETWORK CAPITAL called again on August 25, 2020 at 8:34am, and the sales representative self-identified using a first name Mr. Sapan did not hear clearly but thinks was "Alise" but who did clearly say "with Network Capital" after the name and yet again tried to sell home mortgage refinance services, whereupon Mr. Sapan told her he was not interested and hung up.

31.    NETWORK CAPITAL called again on August 26, 2020 at 10:20am, and the sales representative self-identified as "Alan with Network Capital" trying to sell home mortgage refinance services, whereupon Mr. Sapan told him to stop calling and hung up.

32.    NETWORK CAPITAL called again on August 27, 2020 at 10:45am, and the sales representative self-identified as "George with Network Capital" trying to sell home mortgage refinance services, whereupon Mr. Sapan hung up.

Complaint

33.    NETWORK CAPITAL called again on September 2, 2020 at 12:33pm, and the sales representative self-identified as "Stefan with Network Capital" trying to sell home mortgage refinance services, whereupon Mr. Sapan hung up.

34.    NETWORK CAPITAL called again on September 3, 2020 at 3:45pm, and the sales representative self-identified as "Hector with Network Capital" trying to sell home mortgage refinance services, whereupon Mr. Sapan hung up.

35.    On or about November 7, 2020 at 10:59am, Mr. Sapan received a call from CID number 213-214-0103 with no CID name displayed which he answered, and the caller initially self-identified as "Rose with Connections Corp" asking about Mr. Sapan's mortgage.

36.    Mr. Sapan did not recognize the name of the company and it sounded suspiciously vague and Mr. Sapan knows front-end telemarketers often use fake company names to evade liability, so Mr. Sapan stayed on the line to determine the exact identity of this illegal caller while and answered the questions asked by "Rose with Connections Corp", who then conferenced in someone who self-identified as "Justin with Network Capital" to try to sell NETWORK CAPITAL's mortgage refinance services, and before Mr. Sapan could hang up some technical glitch disconnected the call similar to the first call which also involved bringing a third person on the call.

37.    NETWORK CAPITAL and/or its agent using the same CID number 213-214-0103 called again later on November 7, 2020 at 1:04pm, but Mr. Sapan was busy and knew who the caller was from the CID number so he did not answer.

38.    NETWORK CAPITAL and/or its agent using the same CID number 213-214-0103 called again on November 11, 2020 at 3:20pm and Mr. Sapan answered, however this time the caller immediately self-identified as "James with Network Capital" and Mr. Sapan hung up as he started trying to sell mortgage refinance services.

Complaint

39.     NETWORK CAPITAL and/or its agent using the same CID number 213-214-0103 called again later on November 11, 2020 at 3:21pm, but Mr. Sapan was busy and knew who the caller was from the CID number so he did not answer.

40.     NETWORK CAPITAL and/or its agent using the same CID number 213-214-0103 called again later on November 11, 2020 at 4:50pm, but Mr. Sapan was busy and knew who the caller was from the CID number so he did not answer.

41.     In every call Mr. Sapan answered except the November 7, 2020 call the caller immediately self-identified as being "with", "from" or "at" NETWORK CAPITAL at the outset of their sales pitch.

42.     In the November 7, 2020 call Mr. Sapan answered, the person the front-line caller brought on to make the sale self-identified as being "with" NETWORK CAPITAL at the outset of their sales pitch.

43.     Each time Mr. Sapan answered NETWORK CAPITAL tried to sell mortgage refinance services.

44.     Mr. Sapan never agreed to any callbacks.

45.     Plaintiff alleges on information and belief that NETWORK CAPITAL transmitted the calls he did not answer to Mr. Sapan's residential line which was on the federal "Do Not Call" Registry to sell their mortgage refinance services just like they did in the previous calls using the same CID numbers.

46.     All of the calls were made either by NETWORK CAPITAL directly or "on behalf of" NETWORK CAPITAL within the meaning of 47 U.S.C. 227(c)(5) because the point of all the calls was to sell NETWORK CAPITAL's mortgage refinance services.

47.     Plaintiff pleads on information and belief that to the extent NETWORK CAPITAL may have relied on any agent or other entity to begin telemarketing calls on its behalf, NETWORK CAPITAL had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent.

48.     Alternatively, Plaintiff pleads on information and belief that to the extent NETWORK CAPITAL may have relied on any agent or other entity to begin telemarketing calls on its behalf, NETWORK CAPITAL hired that agent to interact with the public on NETWORK CAPITAL' behalf using NETWORK CAPITAL' name when they brought the NETWORK CAPITAL sales person into the illegal call and therefore gave implied authority to represent NETWORK CAPITAL.

49.     Alternatively, Plaintiff pleads on information and belief that NETWORK CAPITAL ratified the making telemarketing calls on its behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct.

50.     NETWORK CAPITAL may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## DIRECT LIABILITY OF NETWORK CAPITAL

51.     As detailed above, Plaintiff pleads that in every call he answered the caller or the person the front-line caller brought on to make the sale self-identified as being "with NETWORK CAPITAL Mortgage" at the outset of their sales pitch

52.     Plaintiff pleads on information and belief that the officers, managers and employees for NETWORK CAPITAL knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made because the calling was cold call junk telemarketing not directed to any specific person and used a technically sophisticated calling system that could illegally hide Caller ID Name which indicates that this was an intentional and organized corporate sales effort and not a rogue employee or random event.

## **AGENT LIABILITY ALLEGATIONS**

53.    Plaintiff pleads on information and belief that to the extent NETWORK CAPITAL may have relied on any agent or other entity to make telemarketing calls on its behalf, NETWORK CAPITAL had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent and/or authorized such actions by, inter alia, allowing the agent to bring direct NETWORK CAPITAL representatives into the call to attempt to complete the sale.

54.    Alternatively, Plaintiff pleads on information and belief that to the extent NETWORK CAPITAL may have relied on any agent or other entity to make telemarketing calls on its behalf, NETWORK CAPITAL hired that agent to interact with the public on NETWORK CAPITAL' behalf and therefore gave implied authority to represent NETWORK CAPITAL.

55.    Alternatively, Plaintiff pleads on information and belief that NETWORK CAPITAL ratified the making telemarketing calls on its behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct for all the reasons given above.

56.    Plaintiff pleads on information and belief that to the extent NETWORK CAPITAL uses any agents to make calls, NETWORK CAPITAL has ordered their agent to make the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit.

57.    Plaintiff pleads on information and belief that to the extent NETWORK CAPITAL uses any agents to make calls, NETWORK CAPITAL knew or reasonably should have known that its agents were was making the illegal calls to residential numbers on the National "Do-Not-Call" Registry.

58.    Plaintiff pleads on information and belief that to the extent NETWORK CAPITAL uses any agents to make calls, NETWORK CAPITAL

Complaint

explicitly condoned the actions of such agents in making the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit by condoning their actions afterwards.

59.    Plaintiff pleads on information and belief that to the extent NETWORK CAPITAL uses any agents to make calls, NETWORK CAPITAL explicitly hired by such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for the benefit of NETWORK CAPITAL.

60.    Plaintiff pleads on information and belief that "Rose with Connections Corp", if she was not a direct employee of NETWORK CAPITAL using a false name, was an agent of NETWORK CAPITAL hired by NETWORK CAPITAL to conduct telemarketing on NETWORK CAPITAL's behalf, as evidenced by her bringing into the call a person who did self-identify as being "with Network Capital" and the fact a later call using the exact same CID number was made by a person who identified at the outset of the call as being "with Network Capital" with no mention of "Connections Corp", which does not appear to be a real company.

## **"ON BEHALF OF" LIABILITY ALLEGATIONS**

61.    Plaintiff pleads that all calls complained of above were made "on behalf of" NETWORK CAPITAL within the meaning of those words as used in title 47 of the United States Code section 227(c)(5):  "A person who has received more than one telephone call within any 12-month period **by or on behalf of** the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State…" [emphasis added].

62.    Plaintiff contends that "on behalf of" liability is a lesser standard than traditional agency liability.

63.    Plaintiff pleads on information and belief that NETWORK CAPITAL hired, retained, instructed or allowed any entity or person who made the alleged calls to make those calls on behalf of NETWORK CAPITAL in order to sell NETWORK CAPITAL's financial products.

64.    Additionally, any call which was transferred to an employee of NETWORK CAPITAL was made on behalf of NETWORK CAPITAL to sell their services.

65.    Plaintiff pleads on information and belief that "Rose with Connections Corp" in the November 7, 2020 call was hired, paid, retained, and/or engaged to make calls on behalf of NETWORK CAPITAL if she was not just a direct NETWORK CAPITAL employee giving a false business name at the outset of the call as evidenced by her bringing into the call a person who did self-identify as being "with Network Capital" and the fact a later call using the exact same CID number was made by a person who identified at the outset of the call as being "with Network Capital" with no mention of "Connections Corp", which does not appear to be a real company.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

66.    The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

67.    Defendant has intentionally violated the TCPA in a so-far successful attempt to sell financial and mortgage related services.

68.    Plaintiff has been harmed by these calls by the intrusion upon his privacy by callers who had no legal right to call his residential number.

Complaint

69.    Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

70.    Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

71.    During each of Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendant.

72.    As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

73.    Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

74.    Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

/ / /

/ / /

- 13 -
Complaint

## CLASS ACTION ALLEGATIONS

75.    **Description of the Class**:  Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from June 18, 2020 to the present, including up to and through trial.*

76.    Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

77.    Plaintiff reserves the right to modify the Class description and the Class period based on the results of discovery.

78.    **Numerosity**:  The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members

Complaint

are geographically dispersed across California and the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant's call records.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

79.    **Common Questions of Law and Fact Predominate**:  There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

a.    Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

b.    Whether Defendant transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

c.    Whether the transmission of these calls was done willfully or knowingly by Defendant.

d.    Whether agency relationships giving rise to TCPA liability exist amongst and between Defendant and its agents.

80.    **Typicality**:  Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since Defendant has repeatedly called the Class to sell their financial products.

81.    **Adequacy of Representation**:  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with experience in handling complex litigation who has been previously certified as class counsel.  Plaintiff and class counsel are committed to vigorously prosecuting

Complaint

this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor class counsel have any interests adverse to those of the Class.

82.  **Superiority of a Class Action**:  Plaintiff and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the class is impractical.  Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

83.  Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION: TCPA VIOLATION**
**CALLS TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY**
**(On Behalf of the Plaintiff Class)**

84.     Plaintiff realleges all paragraphs above and incorporates them herein by reference.

85.     Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

86.     Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

87.     At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

88.     Defendant has called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line.  These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff.  37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

89.     Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder.  Plaintiff may obtain relief in the form of injunctive relief or Plaintiff may recover up to $500.00 for each violation,

Complaint

or both.  If the court finds that Defendant's violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);

2. For an award of $1,500.00 for each such violation found to have been willful;

3. For injunctive relief pursuant to 47 U.S.C. 227(c)(5)(A);

On ALL CAUSES OF ACTION:

4. For attorney's fees pursuant to all applicable federal and state statutes;

5. For costs of suit herein incurred; and

6. For such further relief as the Court deems proper.


DATED: June 18, 2024                    **PRATO & REICHMAN, APC**

                                        /s/ Christopher J. Reichman, Esq.
                                        By: Christopher J. Reichman Esq.
                                        **Prato & Reichman, APC**
                                        Attorneys for Plaintiffs,
                                        Paul Sapan and the putative class